UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN MCCAUSLAND, et al., | Case No. 23-cv-04526-PCP |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS IN PART** |
| PEPSICO, INC., | Re: Dkt. No. 18 |
| Defendant. | |

In this lawsuit, plaintiffs Ian McCausland, Carlo Garcia, and Michael Zurl allege that PepsiCo, Inc. deceptively advertises that its Gatorade Protein Bars promote consumers' fitness, health, athleticism, and well-being when they in fact contain high levels of total and added sugars that render such claims misleading. Plaintiffs further contend that Gatorade's labeling of the bars as "Protein Bars" is deceptive or misleading because, in truth, the bars' primary ingredient is sugar.

PepsiCo now moves to dismiss plaintiffs' complaint under Rules 12(b)(1) and 12(b)(6). For the following reasons, PepsiCo's motion is granted in part and denied in part.

**Background**

Plaintiff Ian Mccausland is a self-proclaimed fitness enthusiast and resident of San Jose, California who purchased Gatorade Protein Bars in California and on Amazon.com in 2022 and 2023. Compl. ¶¶ 20–22.[1] Plaintiff Michael Zurl is a self-proclaimed fitness enthusiast and resident of Remsenburg, New York who purchased Gatorade Protein Bars in New York and on Amazon.com in 2020, 2021, and 2022. *Id.* ¶¶ 31–33. Plaintiff Carlo Garcia is a self-proclaimed

---

[1] For the purposes of PepsiCo's Rule 12(b)(6) motion, the Court assumes the truth of the allegations in plaintiffs' complaint.

fitness enthusiast and resident of Sanger, California who purchased Gatorade Protein Bars in California and on Amazon.com in 2020. *Id.* ¶¶ 42–44.

Each plaintiff alleges that the label on the Gatorade Protein Bars he bought "touted claims of and/or equivalent to 'PROTEIN BAR' in large, bolded letters, '20 g of Protein,' and contained logos for the NFL, NBA, WNBA, and MLB sports leagues, and the side labels in oversized bolded and capitalized letters, stated 'PROTEIN TO HELP MUSCLES REBUILD.'" Compl. ¶¶ 23, 34, 45. Relying on those statements, similar claims on the Amazon.com landing page for the product, and trust in the Gatorade brand, each plaintiff "believed that consuming Gatorade Protein Bars would be a clear benefit to his muscles and athleticism" and not "a Product with excessive total and/or added sugars." *Id.* ¶¶ 24–26, 35–37, 46–48. No plaintiff was familiar with "how many grams of sugar are in a teaspoon," "what limits on added sugar daily intake the health authorities recommend," or the negative health consequences of regularly consuming high-sugar protein bars. *Id.* ¶¶ 27, 39, 49.

Plaintiffs allege that "PepsiCo's Gatorade Protein Bar marketing is deceptive, misleading, and unlawful, because both individually and collectively the health halo marketing claims, including the Product name, imply that the Product is a fitness enhancer and/or healthful Product that promotes athleticism and well-being when, in fact, it contains high levels of total and added sugars." Compl. ¶ 54. According to plaintiffs, "marketing the inclusion of protein as a nutrient in products appeals to consumers and exponentially increases sales," leading consumers to "mistakenly perceive that adding more protein to their diet is important to health and well-being." *Id.* ¶¶ 56–57. They contend that PepsiCo "capitalizes on this fraudulent advertising trend—with intensive and misleading marketing about the purported benefits of protein and/or the advantages of consuming its protein-fortified Product to enhance general fitness, athleticism and impliedly, overall well-being and/or health—all notwithstanding its high sugar content." *Id.* ¶ 58.

Plaintiffs allege that sugar, not protein, is the Gatorade Protein Bar's primary characterizing ingredient. Consequently, they contend that PepsiCo's use of the word "protein" in the product's name and its claims highlighting the protein content and promoting its effect on muscle growth are deceptive. Compl. ¶¶ 59–60. Further, plaintiffs allege that PepsiCo's marketing

2

of the product, including on Amazon.com, similarly "trumpets the Product's protein content and the purported scientific substantiation for the Product's health benefits (including enhanced athleticism and overall well-being)," in claims including "'Backed by Science,' 'Gatorade Sports Science Institute,' and 'Used by the Pros,' along with logos for and claims of use by the NFL, MBL, NBA, and MNBA." *Id.* ¶ 61. Similarly, they allege that PepsiCo's reference to science and specifically the Gatorade Sports Science Institute (e.g., "Formulated and tested at the Gatorade Sports Science Institute") works to deceive consumers into thinking that the institute's work is aimed at promoting health and athletic performance. *See id.* ¶¶ 62–64.

Plaintiffs allege that a "single serving of the Product—one Gatorade Protein Bar—exceeds the daily, health-based limits for added sugars recommended by the AHA for women and youth, and approaches it for men." Compl. ¶ 87. Plaintiffs contend that consumers are unaware of this fact because PepsiCo fails to clearly state the percentage of recommended daily limit (Recommended Daily Value or %DV) of sugar for the Product the way it does for fat and sodium. *Id.* ¶ 64. PepsiCo also does not state "by way of teaspoons the added sugars content" on the principal display pane (PDP). According to plaintiffs, "[a]verage consumers, as is the case with the Plaintiffs, who trust Gatorade and its marketing, are not sufficiently nutritionally literate, or sophisticated scientifically, to comprehend that the amount of added sugars in the Product is high and/or excessive, and/or to understand that the leading health authorities advise against the consumption of added sugars at such levels given links to disease—particularly when presented with Gatorade/PepsiCo's health halo marketing about protein levels and the Product overall." *Id.* ¶ 68. Plaintiffs allege that PepsiCo's deceptive marketing occurs in the wake of widespread and high rates of obesity, diabetes, and cardiovascular disease correlated with the consumption of processed foods and excessive amounts of added sugars, often hidden or unrecognized, across the country. By contrast, according to plaintiffs, there is little evidence of protein deficiency among Americans. *See id.* ¶¶ 70–84.

Plaintiffs allege that they would not have purchased the bars, would have purchased fewer bars, or would have paid a lower price for the bars had they understand the nutritional character of the product. They allege that they each lost money due to PepsiCo's "misleading and unlawful

3

marketing." *Id.* ¶¶ 28–29, 39–40, 50–51. Each plaintiff alleges that he would "consider purchasing the Product again were it marketed in a non-misleading and lawful manner such that he could trust the marketing claims." *Id.* ¶¶ 30, 41, 52.

In their complaint, plaintiffs allege that PepsiCo's conduct violates multiple federal and state statutory provisions, official policies, and regulations targeting deceptive marketing. New York and California both prohibit deceptive business practices and false advertising and incorporate parallel federal principles or provisions into their consumer protection statutes. Compl. ¶¶ 88–89. In New York, this includes its General Business Law Sections 349 and 350. In California, this includes its Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* ("UCL"); its Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.* ("CLRA"); and its False Advertising Law, California Business and Professions Code § 17500 ("FAL"). *Id.* ¶ 89.

In support of their claims, plaintiffs also point to several provisions of federal law. Section 343 of the federal Food, Drug, and Cosmetic Act ("FDCA") provides that food is "misbranded … (a) if (1) its labeling is false or misleading in any particular." 21 U.S.C. § 343(a). In contravention of this provision, according to plaintiffs, "PepsiCo's marketing misleads consumers about the true qualities and characteristics of Gatorade Protein Bars." Compl. ¶¶ 90–91. 21 C.F.R. § 102.5 separately requires that foods be named after their characterizing ingredients. It specifically provides that "[t]he common or usual name of a food shall include a statement of the presence … of any characterizing ingredient(s) or component(s) … when the presence … of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance." 21 C.F.R. § 102.5(c)(1). Under this standard, plaintiffs allege that the characterizing ingredient in Gatorade Protein Bars is sugar, not protein. Compl. ¶ 92. The regulations further require that the principal display panel of a product "bear as one of its principal features a statement of the identity of the commodity." 21 C.F.R. § 101.3(a). Accordingly, plaintiffs allege that "sugar—more so than protein—needs to be conspicuously referenced in the Product name on the PDP." Compl. ¶ 94. This is because, according to plaintiffs, "Gatorade Protein Bars have **30% more sugar by weight than they do protein**." *Id.* ¶ 95 (emphasis in original).

4

Plaintiffs also allege that PepsiCo "runs afoul of the FDA's policy against random fortification of foods," known as the Jelly Bean Rule. Compl. ¶¶ 97–99. 21 C.F.R. § 104.20(a) recognizes that such fortification, including of sugars, "could result in deceptive or misleading claims for certain foods." According to plaintiffs, PepsiCo "egregiously" violates this policy with respect to the Gatorade Protein Bars. Compl. ¶ 99.

Finally, plaintiffs note that the "FDA Draft Policy on Dietary Guidance Statements similarly seeks to prevent deceptive marketing of junk foods by limiting foods that use dietary guidance statements about protein (and other nutrients) in their marketing to those foods **that have fewer than 10% DV, or 5 grams, or added sugars[, while] Gatorade Protein Bars have 28 grams of added sugars**." Compl. ¶ 100 (emphasis in original). Plaintiffs argue that this draft policy "evinces the FDA's own expert thinking on consumer fraud and consumer susceptibility to fraud when foods high in added sugars … are fortified with nutrients and then packaged and marketed as healthy and/or nutritious and/or good-for-you foods—precisely as PepsiCo's does with Gatorade Protein Bars." *Id.* ¶ 102.

PepsiCo moves to dismiss plaintiffs' claims pursuant to Rule 12(b)(1) and Rule 12(b)(6). PepsiCo first seeks to dismiss plaintiffs' complaint in its entirety on the ground that plaintiffs' claims are preempted by the FDCA. Second, PepsiCo seeks to dismiss all of plaintiffs' claims on the ground that plaintiffs do not plausibly allege that PepsiCo's labeling and marketing of the Gatorade Protein Bars is likely to deceive a reasonable consumer, as is required to state a claim for relief under California's UCL, FAL, and CLRA and under New York's General Business Law. Third, PepsiCo argues that plaintiffs fail to state a claim under either the "unlawful" or "unfair" prongs of California's UCL. Fourth, PepsiCo argues that plaintiffs' request for equitable restitution fails because plaintiffs do not allege that they lack an adequate remedy at law. Finally, PepsiCo argues that plaintiffs lack Article III standing to seek injunctive relief.

## LEGAL STANDARDS

A complaint that fails to establish a federal court's subject matter jurisdiction may be dismissed pursuant to Rule 12(b)(1). An attack on jurisdiction "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the

complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A facial attack accepts the truth of the plaintiff's allegations but asserts they are "insufficient on their face to invoke federal jurisdiction;" such an attack is resolved by the district court as it would resolve a motion to dismiss under Rule 12(b)(6). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). By contrast, a factual Rule 12(b)(1) motion can attack "the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly brought before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

Under Rule 12(b)(6), the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). The pleadings must nonetheless allege facts that would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions "can provide the complaint's framework," but the Court will not assume they are correct unless adequately "supported by factual allegations." *Id.* at 679.

## ANALYSIS

### I. PepsiCo's Request for Judicial Notice Is Granted.

PepsiCo requests this Court take judicial notice of the complete packaging and labels for Gatorade Protein Bars. *See* Dkt. Nos. 19 & 20. Because these materials are discussed extensively in the Complaint and central to plaintiffs' claims, the Court grants PepsiCo's request. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").

### II. PepsiCo's Motion To Dismiss Is Granted in Part and Denied in Part.

#### A. Plaintiffs' Claims Are Not Entirely Preempted.

The Supremacy Clause grants Congress the power to preempt state law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). "Even without an express provision for

6

preemption, state law must yield to a congressional Act in at least two circumstances." *Id.* First, state law must yield "[w]hen Congress intends federal law to 'occupy the field.'" *Id.* Second, "state law is naturally preempted to the extent of any conflict with a federal statute." *Id.* Courts "will find preemption where it is impossible for a private party to comply with both state and federal law" and "where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372–73 (cleaned up). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.* at 373.

The purpose of the FDCA is to "protect the health and safety of the public at large." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 108 (2014). To that end, the FDCA prohibits the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce." 21 U.S.C. § 331(b). The Nutritional Labeling and Education Act (NLEA) amended the FDCA to "establish uniform food labeling requirements, including the familiar and ubiquitous Nutrition Facts Panel found on most food packages." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) (cleaned up). Following this amendment, the FDCA "expressly preempts all state statutes and law that 'directly or indirectly establish any requirement for the labeling of food that is not identical to the federal requirements' set forth by statute and Food and Drug Administration (FDA) regulations." *Nacarino v. Kashi Co.*, 77 F.4th 1201, 1204 (9th Cir. 2023); *see* 21 U.S.C. § 343-1(a)(3) ("Except as provided in subsection (b), no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce … any requirement for the labeling of food of the type required by section 343(b), 343(d), 343(f), 343(h), 343(i)(1), or 343(k) of this title that is not identical to the requirement of such section … ").

PepsiCo seeks to dismiss plaintiffs' claims on the grounds that they are expressly preempted by the FDCA. PepsiCo first argues that plaintiffs' claims "would impose requirements for labeling sugar content that differ from the requirements of federal law." Dkt. No. 18, at 14. Federal regulations require that PepsiCo include a "statement of the number of grams of [total]

7

sugar in a serving," on the nutrition label for Gatorade Protein Bars. 21 C.F.R. § 101.9(c)(6)(ii). The label must also include the "amount (in grams)" of added sugars underneath total sugar. *Id.* § 101.9(c)(6)(iii). The Gatorade Protein Bars comply with those requirements, and PepsiCo argues that plaintiffs are seeking to "hold PepisCo liable under state law for labeling sugar content in the way that federal law requires." Dkt. No. 18, at 14.

Plaintiffs respond that the remedy they seek would not require labeling in contravention of or otherwise not identical to federal requirements but could include, for example, PepsiCo "reformulating its Product to reduce the added sugar." Dkt. No. 21, at 12. In support, plaintiffs cite to this Court's decision *Krommenhock v. Post Foods, LLC*, in which the plaintiffs alleged that the defendant "cannot continue to use … voluntary health and wellness statements because they are misleading in light of the added sugar content," 255 F. Supp. 3d 938, 951 (N.D. Cal. 2017). The Court concluded that by "[t]reating plaintiffs' claims as akin to an omissions by material misstatement claim, plaintiffs are not arguing that Post *must* disclose the added sugar content." *Id.* Consequently, the Court held that those claims were not preempted. *Id.* Similarly, plaintiffs here allege that they "make no allegation that the excess sugar content in the Product must be labeled and/or consumers warned about the high sugar content as an independent matter." Dkt. No. 21, at 12. Plaintiffs instead claim that PepsiCo's omission of the Daily Value of sugar while including that value for fat and sodium "works to enhance the deception created by the other marketing claims*." Id.* at 11–12.

PepsiCo is correct in part. As PepsiCo argues, plaintiffs' claims are preempted to the extent that they seek to impose labeling requirements that are not identical to the requirements of federal law. Accordingly, plaintiffs cannot pursue any claim that PepsiCo's failure to label the amount of sugar and added sugar in teaspoons (rather than the grams required by the FDA) or to include a Daily Value for sugar *itself* constitutes deceptive or misleading advertising in violation of California or New York law. *See, e.g.*, *Krommenhock*, 255 F. Supp. 3d at 954. Although that omission cannot serve as the substantive basis for any of plaintiffs' claims, it remains relevant, as in *Krommenhock*, to determining what a reasonable consumer might understand about the bars' sugar content and whether PepsiCo's *other* statements about its bars are misleading or deceptive in

8

light thereof.

PepsiCo separately argues that plaintiffs' claims require the Court to treat sugar as a "disqualifying nutrient" even though federal law does not. 21 C.F.R. § 101.14(a)(4) prohibits a product from making an express or implied health claim if it contains certain "disqualifying" levels of "total fat, saturated fat, cholesterol, or sodium." Those regulations further require products bearing claims such as "low sodium" or "contains 100 calories" to include a disclosure "immediately adjacent" to the claim if the product contains certain levels of fat, saturated fat, cholesterol, or sodium. 21 C.F.R. §§ 101.13(b), (h). Those regulations do not require such a disclosure for sugar content. *See id.*

PepsiCo argues that the "FDA has expressly determined … that there is 'no sound basis 'to 'limit health claims on foods on the basis of added sugars'" while plaintiffs seek to do just that using state law. Dkt. No. 18, at 15 (citing *Food & Drug Admin., Food Labeling: General Requirements for Health Claims for Food*, 58 Fed. Reg. 2478, 2491 (Jan. 6, 1993)). In support of its position, PepsiCo relies heavily on an unpublished Ninth Circuit decision, *Clark v. Perfect Bar, LLC*, 816 Fed. App'x 141, 143 (9th Cir. 2020). Dkt. No. 22, at 8 ("Most noticeably, Plaintiffs gloss over the Ninth Circuit's squarely on-point decision in *Clark*. … *Clark* ends the preemption inquiry."). In that case, the Ninth Circuit affirmed the district court's dismissal of the plaintiffs' claims, holding that "[a]llowing a claim of misbranding under California law based on misleading sugar level content would 'indirectly establish' a sugar labeling requirement 'that is not identical to the federal requirements,' a result foreclosed by our precedent." *Clark*, 816 Fed. App'x at 143 (citing *Hawkins v. Kroger Co*, 906 F.3d 763, 770 (9th Cir. 2018)). To the extent plaintiffs here similarly seek to "ascribe disqualifying status" to sugar, PepsiCo argues, those claims are preempted. Dkt. No. 18, at 15–16.

Plaintiffs respond that the challenged marketing and advertising statements by PepsiCo do not involve the kind of health or nutrient-content claims that would support preemption on the theory that the claims are permissible under federal law absent the FDA's classification of sugar as a disqualifying nutrient. *See* Dkt. No. 21, at 12–13. Plaintiffs assert that they allege only that "PepsiCo's current marketing and advertising of the Product is deceptive, misleading, and

unlawful based on its affirmative claims—*voluntary claims* that are subject to FDCA's prohibition on deceptive labeling." *Id.* at 11. These purportedly voluntary claims include PepsiCo's failure to reference sugar, the product's primary characterizing ingredient, in the product name, *see* Compl. ¶ 59; its labeling claims including that the bars contain "PROTEIN TO HELP MUSCLES REBUILD" and "replenish and rebuild muscles," *see* Compl. ¶ 60; its use of imagery related to athleticism and professional athletes, *see* Compl. ¶ 61; and its use of statements like "Backed by Science" and "Used by the Pros," *see* Compl. ¶ 61.

Again, PepsiCo is correct in part. Plaintiffs' claims are preempted to the extent that they challenge health or nutrient-content claims that are permissible under federal law. Because the FDA has determined that sugar is not a disqualifying ingredient, its presence in the bars does not preclude PepsiCo from including express or implied health claims in the bars' labeling. Likewise, PepsiCo is allowed to include nutrient-content claims with its bars so long as those claims are consistent with federal regulations.

For preemption to apply, however, "the defendant must establish that the challenged claim is a nutrient-content or health claim and not a voluntary, unregulated claim." *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 972 (N.D. Cal. 2022) (cleaned up). The FDA Food Labeling Guide defines a "nutrient content claim" as "a claim on a food product that directly or by implication characterizes the level of a nutrient in the food (e.g., 'low fat,' 'high in oat bran,' or 'contains less than 100 calories.')." Food & Drug Admin., A Food Labeling Guide: Guidance for Industry 72 (2013), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-food-labeling-guide (citing 21 C.F.R. §§ 101.13(a), (b)).[2] A "health claim" is "any claim made on the label or in labeling of a food … that expressly or by implication, including 'third party' references, written statements (e.g., a brand name including a term such as 'heart'), symbols (e.g., a heart symbol), or vignettes, characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1). "Implied health claims include those statements, symbols, vignettes, or other forms of communication that

---

[2] The Court takes judicial notice of this document, which is non-binding regulatory guidance disseminated by a regulatory agency. *See* Fed. R. Evid. 201.

suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition." *Id.* With limited exception, the FDA defines a "disease or health-related condition" as "damage to an organ, part, structure, or system of the body such that it does not function properly (e.g., cardiovascular disease), or a state of health leading to such dysfunctioning (e.g., hypertension)." 21 C.F.R. § 101.14(a)(5). The "FDA will promulgate regulations authorizing a health claim only when it determines, based on the totality of publicly available scientific evidence … that there is significant scientific agreement, among experts qualified by scientific training and experience to evaluate such claims, that the claim is supported by such evidence." 21 C.F.R. § 101.14(c). Accordingly, "[g]eneral claims of health and wellness are not health claims." *McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-02327-BAS-JLB, 2018 WL 3956022, at *7 (S.D. Cal. Aug 17, 2018)).

Although PepsiCo is correct that plaintiffs' claims are preempted to the extent they challenge health or protein-content claims that are consistent with federal regulations, PepsiCo's second preemption argument fails to dispose of this case because many of the statements that plaintiffs claim constitute deceptive or misleading advertising cannot reasonably be construed as health or nutrient-content claims. While "20G PROTEIN" is naturally read as a claim about the nutrient-content of the bars and "PROTEIN TO HELP MUSCLES REBUILD" might constitute a health claim or implied health claim, plaintiffs also rely upon statements like "'Backed by Science," and "Used by the Pros," the bars' use of the logos for and claims of use by the NFL, MBL, NBA, and MNBA," and PepsiCo's claim that the bars were formulated and tested at the Gatorade Sports Science Institute. These statements do not involve health or nutrient-content claims regulated by the FDA, so federal law does not preempt plaintiffs' state law claims premised thereon.[3]

---

[3] As plaintiffs correctly note, the Ninth Circuit's non-precedential decision in *Clark* addressed only claims of improper labeling and branding, not claims involving other alleged misrepresentations that are not subject to federal regulation. As this Court has previously noted, "the weight of authority in th[is] district" supports the viability of a false advertising claim asserting that "advertising suggests the product is healthy despite harmful levels of added sugar." *LeGrand v. Abbott Labs.*, 655 F. Supp. 3d 871, 892 (N.D. Cal. 2023).

Finally, PepsiCo argues that plaintiffs' challenge to the name "Protein Bar" is inconsistent with and therefore preempted by federal law. According to PepsiCo, "Plaintiffs cannot force these products to be labeled 'candy bar' or 'dessert' under state law" because "FDA regulations govern how a food product is named, and Plaintiffs do not plausibly allege a violation of these requirements." Dkt. No. 18, at 16. To plausibly allege a violation of the FDA's regulations, which are located at 21 C.F.R. § 102.5, PepsiCo alleges that plaintiffs "must plausibly allege that the challenged ingredient is in fact considered a characterizing ingredient of the product, and that consumers *expect* its presence or absence in the product." *Id.*; *see, e.g.*, *Ross v. Sioux Honey Ass'n, Coop.*, No. C-12-1645 EMC, 2013 WL 146367, at *5 & 11–12 (N.D. Cal. Jan. 14, 2013) (dismissing the plaintiff's claims with prejudice because the plaintiff "cite[d] no authority denoting pollen as a 'characterizing component' of honey"); *Cardona v. Target Corp.*, No. CV 12-1148-GHK (SPx), 2013 WL 1181963, at *10 (C.D. Cal. Mar. 20, 2013) (holding that the plaintiffs failed to "plausibly allege a widespread consumer expectation" that the term "'honey' … means 'honey with pollen'"). In response to plaintiffs' contention that the Products "have 30% more sugar by weight than they do protein" and that sugar therefore is a characterizing ingredient of Gatorade Protein Bars, PepsiCo argues that plaintiffs have failed to allege that consumers expect the term "protein bar" to mean low in sugar or cite any authority suggesting that an ingredient's weight or proportion of total calories is what determines a characterizing ingredient. Dkt. No. 18, at 17.

Plaintiffs challenge PepsiCo's characterization of their claims and clarify that they "*never* claimed that PepsiCo is required to" label their protein bar as "candy bar" or "dessert." Dkt. No. 21, at 11. They assert that the "real issue is whether FDA regulations insulate Gatorade Protein Bar's deceptive and misleading name, and nowhere does PepsiCo cite a single authority holding that they do." *Id.* at 16. Plaintiffs argue that "PepsiCo's citation to 21 C.F.R. § 102.5 does not alter the result" because PepsiCo does not "proffer as to why protein is a characterizing ingredient … whereas excess added sugar purportedly is not." *Id.* at 16–17.

The parties' disagreement about the application of the FDA's "characterizing ingredient" regulations to Gatorade Protein Bars presents factual issues that cannot be resolved on a Rule

12

12(b)(6) motion to dismiss. Unlike certain foods for which federal regulations provide a "standard identity," goods like protein bars are required by federal regulations to use a common or usual name to "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. §§ 102.5(a), (d). 21 C.F.R. § 102.5(c) requires that the common or usual name disclose "the presence or absence of any characterizing ingredient" if (1) that ingredient "has a material bearing on price or consumer acceptance" and (2) "consumers may otherwise be misled about the presence or absence of the ingredient … in the food." Both of these prongs involve deeply factual questions. At a later stage in these proceedings, PepsiCo may be able to establish as a factual matter that its labeling of the bars as "protein bars" satisfies these requirements and is therefore permissible under federal law, such that plaintiffs' challenge to the bars' name is preempted. But on the present Rule 12(b)(6) motion, in which the Court must accept plaintiffs' allegations as true, draw all inferences in their favor, and decline to resolve factual disputes, the Court cannot resolve that issue as a matter of law.

Because none of PepsiCo's federal preemption theories disposes of the entirety of one or more of plaintiffs' state law claims, the Court denies PepsiCo's motion to dismiss to the extent it is premised on a federal preemption theory. The Court's denial of PepsiCo's motion is without prejudice to PepsiCo's ability to reassert its preemption arguments at summary judgment or trial should plaintiffs pursue a theory of liability that is inconsistent with the reasoning herein or the requirements of federal law or should PepsiCo be able to establish that the facts (as opposed to plaintiffs' allegations in the Complaint) support their arguments for preemption.

### B. Plaintiffs Plausibly Allege Claims of Consumer Deception

PepsiCo separately argues that plaintiffs do not plausibly allege that reasonable consumers would be deceived by PepsiCo's labeling of Gatorade Protein Bars because the labels do not make claims about healthiness or low sugar. Dkt. No. 18, at 18.

Under the reasonable consumer test, the plaintiff must "show that members of the public are likely to be deceived." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). This "requires more than a mere possibility" that the label "might conceivably be

misunderstood by some few consumers viewing it in an unreasonable manner." *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003)). "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (cleaned up). Generally, "'whether a reasonable consumer would be deceived' is a question of fact." *Johnson-Jack*, 587 F. Supp. 3d at 964 (citation omitted).

PepsiCo argues that plaintiffs fail to allege that reasonable consumers would "misinterpret 'protein' or any other challenged statement to mean 'healthy' or 'low sugar." Dkt. No. 18, at 18. PepsiCo cites to a case in which the court dismissed claims where the plaintiffs sought to equate the FITBAR energy bar with "healthy" or related terms. *See Seljak v. Pervine Foods, LLC*, No. 21 Civ. 9561 (NRB), 2023 WL 2354976, at *1, 9, 14–15 (S.D.N.Y. Mar. 3, 2023) (holding that a reasonable consumer would not believe that a product was healthy where it comes in flavors that sound like desserts despite "FIT" being in the name). PepsiCo argues that plaintiffs' claims in this case are "implausible for the same reasons." Dkt. No. 18, at 19. According to PepsiCo, "truthful statements about protein, athletic recovery, and rebuilding muscles do not mean healthy or low in sugar," and the label *does* in fact disclose the sugar content of the bars. *Id.* at 19–20.

PepsiCo argues that the relevant context here further supports the conclusion that no reasonable consumer would be misled. Dkt. No. 18, at 20. PepsiCo emphasizes that "this sports-related context only underscores that Gatorade Protein Bars are sports protein bars aimed at workout recovery" because reasonable consumers "know and expect that a product designed for athletic recovery contains carbohydrates in the form of sugar to aid in the recovery process." *Id.* at 21. "In short," PepsiCo concludes, "even if Plaintiffs had plausibly alleged that *they* misunderstood the Products' labeling, Plaintiffs' own misunderstanding 'does not make it so' for all consumers." *Id.* (citation omitted). *See, e.g.*, *Becerra*, 945 F.3d at 1231 ("Becerra has failed to sufficiently allege that reasonable consumers understand the word "diet" in Diet Dr Pepper's brand name to promise weight loss, healthy weight management, or other health benefits. Accordingly, Becerra has not sufficiently alleged that Diet Dr Pepper's labeling is false or

misleading and dismissal was therefore proper.").

In response, plaintiffs emphasize that "the 12(b)(6) stage is 'not the appropriate time to weigh the competing harms and benefits from [defendant's] products,' how reasonable consumers perceive them, nor the degree to which reasonable consumers understand or are familiar with the science surrounding them." Dkt. No. 21, at 18 (citing *Krommenhock*, 2017 WL 2378029, at *19; *Milan*, 2019 WL 3934918, at *2). Based on PepsiCo's claims and advertising focused on the protein content of the bars, claims regarding muscle-building and science, and emphasis on athleticism adjacent to logos for professional sports team, plaintiffs argue that "it is readily plausible that they may lead a reasonable consumer to believe the product is healthful, i.e., that it associates with overall physical wellness, enhanced athleticism and performance, and/or better muscles and bodies—including with routine and prolonged use." *Id.* at 19. Plaintiffs further plead that health authorities affirmatively discourage consuming the amount of sugar contained in the protein bars in a single product, and that consumers are surprised to find out how much added sugar the bars contain. *Id.* (citing Compl. ¶¶ 10–13, 70–87, 104–105, 108–111). Plaintiffs note legal precedents purportedly supporting the reasonableness of their claims. *See, e.g.*, *Milan*, 2019 WL 3934918, at *2 (concluding that "plaintiffs have stated a claim and, 'given the opportunity, ... could plausibly prove that a reasonable consumer would be deceived by' the Clif bars" packaging that misled consumers into thinking the bars are healthy despite substantial added sugar).

The Court agrees that plaintiffs have plausibly pleaded that reasonable consumers are likely to be deceived by PepsiCo's advertising, marketing, and labeling of Gatorade Protein Bars. *See, e.g.*, *LeGrand v. Abbott Labs.*, 655 F. Supp. 3d 871, 892 (N.D. Cal. 2023) (finding it plausible "that a reasonable consumer could be misled by product labeling indicating healthfulness when the product contained harmful levels of added sugar" and "declin[ing] to hold that disclosure of sugar content on a label necessarily precludes a claim alleging advertising promoting a product as healthy is misleading because of the harmful amounts of added sugar in the product"). Whether the reasonable consumer understands that a product aimed at athletic recovery contains carbohydrates or the level of sugar contained in the Gatorade Protein Bars is a factual question not properly resolved at the 12(b)(6) stage. Plaintiffs have plausibly pleaded that they were otherwise

15

reasonable consumers, were not knowledgeable enough to properly interpret the sugar content listed on the label, and were deceived given PepsiCo's marketing campaign and self-proclaimed science-backed claims. Nothing more is required to avoid dismissal under Rule 12(b)(6).

### C. Plaintiffs Plausibly State Claims Under the "Unlawful" and "Unfair" Prongs of the UCL.

The UCL prohibits any "unlawful, unfair, or fraudulent" business practice." Cal Bus. & Prof. Code § 17200. "By proscribing 'any unlawful" business practice, 'section 17200 'borrows' violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "Although the unfair competition law's scope is sweeping, it is not unlimited. … If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Id.* at 182.

PepsiCo argues that plaintiffs cannot state a claim under either the "unlawful" or "unfair" prongs of California's UCL. (Plaintiffs are not pursuing a claim under the UCL's "fraudulent" prong.) PepsiCo first argues that plaintiffs' allegations under the "unlawful" prong fail because they have failed to plead a predicate violation. But for the reasons noted above, plaintiffs have pleaded plausible violations of state law. They have also plausibly pleaded that PepsiCo's conduct may violate both 21 U.S.C. § 343 and 21 C.F.R. § 102.5. All of these theories are sufficient to support a UCL claim under its "unlawful" prong.

PepsiCo separately argues that "plaintiffs do not and cannot allege an unavoidable consumer injury that could give rise to an 'unfair' UCL claim." Dkt. No. 18, at 22. This is so, according to PepsiCo, because plaintiffs "could have reasonably avoided their purported injuries simply by reading the labeling." *Id.*; *see, e.g.*, *Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252, 1261 (N.D. Cal. 2015) ("Under the UCL, an act or practice is unfair if the consumer injury … is not an injury consumers themselves could reasonably have avoided."). But again, whether plaintiffs' injuries were avoidable presents a factual dispute not proper for resolution on a Rule 12(b)(6)

16

motion. Plaintiffs' allegation that they were reasonably misled notwithstanding the label's disclosure of sugar content is sufficiently plausible to preclude dismissal on this ground. *See, e.g.*, *LeGrand*, 655 F. Supp. 3d at 892.

### D. Plaintiffs Lack Article III Standing To Seek Injunctive Relief.

PepsiCo additionally argues that plaintiffs' request for prospective injunctive relief under the UCL and CLRA should be dismissed for lack of Article III standing because "Plaintiffs have not alleged they face a 'real and immediate' threat of future harm that is likely to be redressed by the requested in junctive relief." Dkt. No. 18, at 24. PepsiCo notes that plaintiffs merely allege that they "would *consider* purchasing [Gatorade Protein Bars] again were [they] marked in a non-misleading and unlawful manner such that [they] could trust the marketing claims." *Id.* (quoting Compl. ¶¶ 30, 41, 52). PepsiCo contends that, "[a]bsent a *clear intention* to buy Gatorade Protein Bars in the future, or factual allegations that Plaintiffs will be deceived and cannot rely on the labeling of Gatorade Protein Bars, Plaintiffs lack standing to seek injunctive relief." *Id.* (citing *Graham v. Cent. Garden Pet Co.*, No. 22-cv-06507-JSC, 2023 Wl 2744391, at *4 (N.D. Cal. Mar. 30, 2023).

In response, plaintiffs argue that their allegation that they would "consider purchasing the Product again" is sufficient and all that is needed to confer standing for injunctive relief. Dkt. No. 21, at 24; *see Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, No. 22-CV-05086-JST, 2023 WL 3856722, at *3 (N.D. Cal. May 19, 2023) (holding that the plaintiff had Article III standing where she alleged that she "would consider purchasing Defendant's milk again if Defendant were to treat cows in a manner consistent with its advertising"); *Coe v. General Mills, Inc.*, 2016 WL 4208287, at *6 ("[A] plaintiff must allege the intent to purchase a product in the future in order to have standing to seek prospective injunctive relief").

The Court agrees with PepsiCo that plaintiffs' existing complaint fails to establish their Article III standing to pursue claims for injunctive relief. Although "a previously deceived plaintiff may have standing to seek injunctive relief" where she would consider purchasing a product in the future if able to rely upon the defendant's representations, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 & n.5 (9th Cir. 2018), plaintiffs here need not rely upon PepsiCo's

17

marketing, advertising, and labeling of Gatorade Protein Bars to determine whether they contain levels of total or added sugar in amounts they deem unhealthy. They can instead find that information by reviewing the labels on the bars. Although the disclosure of sugar content therein might be insufficient to prevent a reasonable consumer from being deceived by PepsiCo's advertising and marketing campaign, as plaintiffs allege, *see LeGrand*, 655 F. Supp. 3d at 892, plaintiffs can no longer claim such ignorance after having filed this lawsuit. As sophisticated consumer litigants now aware of the relationship between the amounts of sugar disclosed on the bars' labels and their own health concerns, plaintiffs can avoid any future injury simply by reviewing the bars' labels.

Because plaintiffs have not alleged a concrete threat of future harm, the Court grants, with leave to amend, PepsiCo's motion to dismiss plaintiffs' requests for injunctive relief pursuant to Rule 12(b)(1).

### E.   Plaintiffs Fail To Plead an Entitlement To Equitable Relief.

In addition to injunctive relief, plaintiffs "seek an order for the disgorgement and restitution of all monies from the sale of Gatorade Protein Bars that were unjustly acquired." Compl. ¶¶ 150, 158; *see also id.* ¶¶ 164, 168, 170. PepsiCo argues that this request for equitable relief fails because plaintiffs do not allege that they lack an adequate remedy at law. PepsiCo further claims that plaintiffs cannot possibly do so because they "seek money damages—a quintessential remedy at law—for their CLRA and New York GBL claims based on the very same allegedly unlawful and misleading labeling." Dkt. No. 18, at 23; *see Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020).

In response, plaintiffs argue that their request for equitable restitution should not be dismissed because it is an alternative remedy that plaintiffs are entitled to pursue at the pleading stage. Dkt. No. 21, at 24; *see Johnson-Jack*, 587 F. Supp. 3d at 976 (holding that the "undersigned follows the courts in this district that find no bar to the pursuit of alternative remedies at the pleading stage and denies the motion to dismiss") (collecting cases)).

Although *Sonner* may have limited applicability at the pleading stage (when it is unclear what damages will be available, let alone if those damages will be adequate), *Sonner* at the very

least requires that plaintiffs pursuing claims for equitable relief in federal court plead that their legal remedies are inadequate. Here, plaintiffs have not done so. Their claims for equitable monetary relief under the UCL and CLRA are therefore dismissed with leave to amend.

## CONCLUSION

For the foregoing reasons, PepsiCo's motion to dismiss is granted in part and denied in part. Any amended complaint shall be filed within 21 days of this order.

**IT IS SO ORDERED.**

Dated: August 14, 2024

P. Casey Pitts
United States District Judge